# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 9
The People &c.,
     Respondent,
    v.
Vladimir Duarte,
     Appellant.

Molly Schindler, for appellant.
R. Jeannie Campbell-Urban, for respondent.

MEMORANDUM:

The order of the Appellate Term should be affirmed. The intermediate appellate court correctly concluded that defendant did not clearly and unequivocally request to proceed pro se. During a colloquy with the trial court, defendant referenced the

- 1 -

unsuccessful application to relieve his assigned counsel made at his prior appearance, and

he renewed that application, claiming that counsel was "ineffective."  The court denied the

application and rejected defendant's renewed attempt to read aloud from what defendant

had previously referred to as "my testimony."  Upon review of the record as a whole,[*]

defendant's retort, "I would love to go pro se," immediately after the court's denial of his

applications "d[id] not reflect a definitive commitment to self-representation" that would

trigger a searching inquiry by the trial court (*People v LaValle*, 3 NY3d 88, 106 [2004];

*see People v Gillian*, 8 NY3d 85, 88 [2006]; *People v McIntyre*, 36 NY2d 10, 17 [1974]).

---

[*]Contrary to the dissent's assertion, the relevant facts are in dispute (*see* dissenting op at 2).  Whether defendant's statement was an unequivocal request in the context of the Sixth Amendment is determined by the facts of the surrounding circumstances in the case as well as defendant's conduct, including manner of expression, demeanor, and word choices (*see Williams v Bartlett*, 44 F3d 95, 100 [2d Cir 1994]; *cf. People v Glover*, 87 NY2d 838, 839 [1995]; *Fields v Murray*, 49 F3d 1024, 1029-1032 [4th Cir 1995]).  This record demonstrates that the court did not clearly deny the purported request, and neither defendant nor defense counsel sought any decision on that issue from the court at any point in the proceedings.  Both factors suggest that the request was not considered genuine in the first instance by those present in the courtroom who heard the statement.

RIVERA, J. (dissenting):

"I would love to go pro se."

That's exactly what defendant said in open court. The import of these seven words is obvious: defendant wanted to represent himself. Under *People v McIntyre* (36 NY2d 10 [1974]), this clear and unequivocal statement required an inquiry by the court into defendant's request. Here, that inquiry could have been as brief as asking defendant a single question confirming that he meant what he said. Contrary to the majority's suggestion, defendant, unlike the court, did not need to say or do anything else (*see* majority op at 2 n). Once defendant invoked his constitutional right to self-representation, it was for the court to inquire whether his decision was made knowingly and intelligently (*id.* at 17). The court's failure to do so constitutes reversible error (*People v Smith*, 68 NY2d 737, 738-739 [1986]). Therefore, I dissent and would reverse and order a new trial. And in case there is any doubt as to my intent, let me repeat: I dissent, unequivocally and without hesitation.

***

The relevant facts are not in dispute and the record is crystal clear. During a suppression hearing in defendant Vladimir Duarte's criminal prosecution, the court and defendant, appearing with counsel, engaged in the following colloquy:

> "Defendant: This is an ineffective counsel. I had made that clear on my last appearance with him. He's not effective at all. This is the first time I've spoken with him actually this close about my case. He's never told me—day one when I met him he believes I did this.
>
> Court: That doesn't mean that he is—that he is not effective.

Defendant:   It's not true, because you're not going to say it to her. He told it to me.

Counsel:     I never said that.

Court:       Mr. Duarte—

Defendant:   So I wish for him not to represent me at all because he's ineffective and he doesn't believe that I did not do this.

Court:       That's denied. People, will you please call your first witness? This is a Wade/Huntley?

Defendant:   I would like to read—

Court:       You can't speak.

Defendant:   I object to your denying me ineffective counseling here.

Court:       Please call the first witness.

Defendant:   I would love to go pro se.

Court:       This is going to be a Huntley/Wade/Dunaway?

Prosecutor:  That's correct.

Court:       Please call your first witness."

There was no further discussion of defendant's request. After a bench trial, the court found defendant guilty as charged and sentenced him to one year in jail.

The Appellate Term affirmed (*People v Duarte*, 69 Misc 3d 148[A] [NY App Term 2020]). The court concluded that defendant did not make a clear and unequivocal request at the suppression hearing to represent himself because his request was presented in the

context of his complaints about his attorney and, in the alternative, that he abandoned his request (*id.*).

The issue before us on appeal is narrow but consequential. Defendant argues that his constitutional right to represent himself was denied when the court failed to properly inquire into his request to proceed pro se. The District Attorney unpersuasively counters that defendant's repeated outbursts in open court—particularly his statements suggesting dissatisfaction with his attorney—render his statement equivocal because they demonstrate that defendant was simply seeking replacement of assigned counsel. We need only read the words on the page to conclude that defendant's statement that he "would love to go pro se" was a clear and unequivocal request to self-represent, which triggered the need for a judicial inquiry into his request. It is undisputed that the court made no inquiry, and, in accordance with our precedent, this error requires reversal and a new trial.

Under both the Federal and New York State Constitutions, defendants have the right to represent themselves (*see* US Const, 6th Amend; *Faretta v California*, 422 US 806, 820 [1975] [explaining that, under the Federal Constitution, a defendant "must be free personally to decide whether in (defendant's) particular case counsel is to (defendant's) advantage . . . (a)nd . . . (defendant's) choice must be honored"]; NY Const art I, § 6 ["In any trial in any court whatever the party accused shall be allowed to appear and defend in person . . . "]; *McIntyre*, 36 NY2d at 15; *see also* CPL 180.10 [5] ["If the defendant desires to proceed without the aid of counsel, the court must permit (them) to do so if it is satisfied that (they) made such decision with knowledge of the significance thereof . . . "]). This

right "embodies one of the most cherished ideals of our culture; the right of an individual to determine [their] own destiny" (*McIntyre*, 36 NY2d at 14; *accord People v Crespo*, 32 NY3d 176, 178 [2018]). The right stands even if it sets defendant on a perilous course to representation without the benefit of a counsel trained and experienced in the law. As the Court has explained, "even in cases where the accused is harming [themselves] by insisting on conducting [their] own defense, respect for individual autonomy requires that [they] be allowed to go to jail under [their] own banner if [they] so desire[] and if [they] make[] the choice with eyes open" (*McIntyre*, 36 NY2d at 14 [internal citation and quotation marks omitted]; *id.* at 16).

In order to determine whether a defendant has properly invoked this right and thus waived the right to counsel, a court must determine whether: "(1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues" (*id.* at 17). "Denial of the right of self-representation is not subject to harmless error analysis" and requires reversal (*People v LaValle*, 3 NY3d 88, 106 [2004]).

Only the unequivocal nature of defendant's request under the first prong is at issue on this appeal.[1] That first prong is established by reference to the suppression hearing colloquy during which defendant stated, plainly, "I would love to go pro se."

---

[1] Contrary to the District Attorney's argument, defendant's statement was made before the start of trial and was, therefore, timely by any measure, as defined by this Court (*see McIntyre*, 36 NY2d at 17; *Crespo*, 32 NY3d at 182).

Deconstructing the statement is simple. Defendant used the verb "would," indicating his desire for the specific action mentioned (*see* Merriam-Webster Online Dictionary, would [https://www.merriam-webster.com/dictionary/would] ["used in auxiliary function to express plan or intention"]). That action was expressed through his use of the Latin term "pro se"—a phrase meaning to act on one's own behalf without a lawyer (*see* PRO SE, Black's Law Dictionary [11th ed 2019] ["For oneself; on one's own behalf; without a lawyer"]). Defendant's words do not lend themselves to any other interpretation.

The clarity of those words forecloses any suggestion of hesitance or uncertainty in defendant's articulation of his request. Indeed, "would" is a form of the auxiliary verb "will" and is used "to express [the speaker's] plan or intention" (*see* Merriam-Webster Online Dictionary, would). Nevertheless, the District Attorney argues that defendant's use of the verb "would" somehow renders his statement conditional. This argument is meritless for two reasons. First, defendant simply did not stipulate any actual condition by saying, for example, that he would "love to go pro se *if he didn't receive a new attorney*." Second, a speaker's use of verbs in the conditional mood, such as "could" and "would"— particularly in formal contexts, such as when a defendant (or an attorney) is speaking to a judge—is merely a means of polite speech that does not obscure the clarity of an otherwise obvious request. To the extent there was any uncertainty about defendant's sincerity, the proper course was for the court to confirm his intent rather than ignore him. Something as simple as "Are you asking to represent yourself?" would have eliminated any possible

doubt as to whether defendant meant what he said and guaranteed protection of defendant's constitutional right.[2]

Contrary to the Appellate Term's conclusion, the fact that this request was made in the context of expressing defendant's dissatisfaction with counsel did not make the request any less clear or suggest equivocation on defendant's part. In fact, the record supports only the opposite conclusion. Defendant's claims of ineffectiveness were tied to his request that counsel no longer represent him, and the court expressly rejected both the merits of defendant's claim and his request to relieve counsel. When defendant sought to further address the court on that matter, the court told him, "You can't speak." Only after the court dispensed with the claims about counsel did defendant invoke his right to represent himself.

It is also unsurprising that defendant's request came on the heels of the court's rejection of his complaints about his lawyer. As the Court in *McIntyre* recognized, "[f]requently, the pro se defendant is motivated by dissatisfaction with the trial strategy of defense counsel or a lack of confidence in [their] attorney" (36 NY2d at 16). No less so where, as here, the defendant is convinced that counsel—the one person who stands before the court on defendant's behalf—does not believe in his innocence. Indeed, the choice to

---

[2] The majority turns our precedent on its head, relieving the trial court of any obligation to inquire into an unambiguous expression of desire to "go pro se" by recasting the court's silence in the face of such a request as a determination that defendant was not being "genuine" (*see* majority op at 2 n). The majority's approach is not grounded in our abundantly clear case law, and, unsurprisingly, it cites not a single case in support of its claim that an explicit request for self-representation is subsequently rendered equivocal because the court failed to fulfill its duty under *McIntyre* or because defendant did not renew his request in response to that failure (*see id.*).

self-represent may be "influenced by a blind faith belief in [a pro se defendant's] innocence and the infallibility of justice" in vindicating that belief (*id.* [internal citations omitted]).

*Matter of Kathleen K.*, *People v Gillian*, and *People v LaValle* are distinguishable and do not control here. Unlike in those cases, and particularly the defendant in *Kathleen K.*, defendant's demand was not intended as leverage for his request for substitution of counsel because defendant did not request another lawyer *at all.* (*see* 17 NY3d 380, 384 [2011] [finding equivocation when defendant "turned . . . down" the lawyer he was provided and affirmatively "asked for (his attorney) to be terminated"]). Nor did defendant intimate that his request to self-represent was an alternative to substitution, as in *Gillian* (*see* 8 NY3d 85, 87 [2006] [noting that "defendant . . . moved in writing for reassignment of counsel or, *in the alternative*, the opportunity to proceed pro se"] [emphasis added]). The court here also did not deny substitution of counsel, with defendant raising the prospect of self-representation solely because he had no choice but to proceed pro se, as in *LaValle* (3 NY3d at 105-106 [noting defendant's statement "The only thing I see and that's my last option is to represent myself, not that I want to, I don't know (anything) about the law, but at least I have a chance to prove my innocence"]). The record refutes this interpretation; on prior occasions defendant had stated he was dissatisfied with counsel but never sought substitution. And again, at the suppression hearing, he only requested that counsel no longer represent him (as opposed to demanding a new attorney) because, in defendant's view, counsel was ineffective for failing to meet with him and because he did not believe in defendant's innocence.

It is worth noting that the trial court never actually denied defendant's request. Rather, the court simply ignored it, leaving the record utterly devoid of any hint as to why (or even *if*) the court found the request equivocal. Nothing in *McIntyre* or its progeny permit inferring ambiguity from a cold record containing solely an unambiguous statement of intent "to go pro se." Even if we infer that defendant sought appointment of new counsel, defendant's response indicating that he wished to proceed pro se in no way provided a basis for the *additional* inference that he was "threatening" to act as his own lawyer if the court did not assign him new counsel, as defendant did not link the two.

Further, the District Attorney's reliance on defendant's actions at previous court appearances is misplaced because this was defendant's first appearance before the suppression hearing judge. Thus, the judge here did not have any basis, other than what was said at the suppression hearing, to consider defendant's request. Nor may defendant's actions after his request to self-represent—which the majority apparently considers as part of its review of the "whole record"—serve as a ground for concluding that his statement was equivocal. *McIntyre* does not support that approach. Absent an express disavowal of the request—which goes directly to whether a request has been unequivocally made in the first instance—a "court may not validate an erroneous denial of a pro se motion on the basis of a postruling outburst" (36 NY2d at 18). If a court may not excuse its error based on a defendant's subsequent courtroom outbursts, neither may a court avoid a mandatory inquiry based on a defendant's postruling silence or acquiescence to the court's denial of the request to self-represent.

The effect of the majority's affirmance here is to complicate what has been a straightforward judicial task: When a defendant says they want to represent themselves, a court must inquire into that request to ensure it is made knowingly and intelligently, and that the request is not merely an attempt to undermine or delay the proceedings (*see McIntyre*, 36 NY2d at 17; *Crespo*, 32 NY3d at 178). Any concern that defendant's request is not genuine is already addressed by the second and third prongs of the *McIntyre* test (*see* 36 NY2d at 19 ["Where a court feels that the motion is a disingenuous attempt to subvert the overall purpose of the trial . . ., the proper procedure is to conduct a dispassionate inquiry into the pertinent factors"]). As our Court has recognized, the best way to assess voluntariness and uncover gamesmanship is through an inquiry into defendant's request and *not* by appellate review without the benefit of defendant's responses and the lower court's on-the-record assessment of defendant's statements and actions at the time of the request.

Although the decision below strays far afield from *McIntyre*, that error appears to be an aberration, as the courts of this state have had little difficulty applying that case's central holding. In doing so, they have safeguarded "one of the most cherished ideals of our culture" (*McIntyre*, 36 NY2d at 14). The reasoning of *McIntyre* has stood the test of time. The majority's memorandum cannot.

Order affirmed, in a memorandum. Chief Judge DiFiore and Judges Garcia, Singas and Cannataro concur. Judge Rivera dissents in an opinion, in which Judge Wilson concurs. Judge Troutman took no part.

Decided February 15, 2022